UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN H. COOK                                                          CIVIL ACTION

VERSUS                                                                NO. 16-954

WARDEN DAVE YELVERTON                                                 SECTION: "J"(1)

REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, John H. Cook, is a state prisoner incarcerated at the Jackson Parish Correctional Center in Jonesboro, Louisiana. On August 19, 2011, he was convicted of creating and operating a clandestine laboratory for the unlawful manufacturing of a controlled dangerous substance (methamphetamine) in violation of Louisiana law.[1] On September 29, 2011, he pleaded guilty to being a second offender and was sentenced as such to a term of ten years imprisonment without

---

[1] State Rec., Vol. 1 of 5, transcript of August 19, 2011, p. 243; State Rec., Vol. 1 of 5, minute entry dated August 19, 2011; State Rec., Vol. 1 of 5, jury verdict form.

benefit of probation or suspension of sentence.[2]  On June 8, 2012, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on January 11, 2013.[4]

While those direct-review proceedings were ongoing, petitioner also filed an application for post-conviction relief with the state district court on April 23, 2012.[5]  On May 7, 2012, that application was denied as premature in light of the pending appeal.[6]  Petitioner's related writ application was then likewise denied by the Louisiana First Circuit Court of Appeal on May 25, 2012.[7]

On January 11, 2013, petitioner filed a federal petition for habeas corpus relief in this Court. That petition was dismissed without prejudice on August 8, 2013, because he had not exhausted his remedies in the state courts.[8]

In the interim, petitioner returned to the state district court, filing an application for post-conviction relief on May 2, 2013.[9]  That application was denied on May 14, 2013.[10]  He sought review of that denial by the Louisiana First Circuit Court of Appeal; however, that court denied

---

[2] State Rec., Vol. 1 of 5, transcript of September 29, 2011; State Rec., Vol. 1 of 5, minute entry dated September 29, 2011; State Rec., Vol. 3 of 5, Reasons for Judgment dated November 28, 2011.
[3] State v. Cook, No. 2011 KA 2336, 2012 WL 2061518 (La. App. 1st Cir. June 8, 2012); State Rec., Vol. 1 of 5.
[4] State v. Cook, 106 So.3d 548 (La. 2013); State Rec., Vol. 2 of 5.
[5] State Rec., Vol. 3 of 5.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to the *pro se* filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed.  In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the filing date placed on the document by the clerk of court.  Any slight imprecision resulting from this method is ultimately of no consequence because petitioner's application is untimely by several months.
[6] State Rec., Vol. 3 of 5, Order dated May 7, 2012.
[7] State v. Cook, No. 2012 KW 0856 (La. App. 1st Cir. May 25, 2012); State Rec., Vol. 3 of 5.
[8] Cook v. St. Tammany Parish Jail, Civ. Action No. 13-0187, 2013 WL 4046283 (E.D. La. Aug. 8, 2013).
[9] State Rec., Vol. 3 of 5.
[10] State Rec., Vol. 3 of 5, Order dated May 14, 2013.

relief on procedural grounds on July 29, 2013, but instructed petitioner that he could file a new procedurally proper writ application on or before September 24, 2013.[11]  Petitioner did as instructed; however, the Court of Appeal again denied relief on February 27, 2014.[12]  The Louisiana Supreme Court then also denied his related writ application on February 13, 2015.[13]

While those proceedings were ongoing, petitioner again returned to the state district court to file a motion to correct illegal sentence on September 4, 2013,[14] but that motion was denied on September 9, 2013.[15]

On March 19, 2014, petitioner then filed yet another motion to correct illegal sentence with the state district court.[16] That motion was likewise denied on March 27, 2014,[17] as was his related writ application by the Louisiana First Circuit Court of Appeal on July 28, 2014.[18]  Petitioner did not seek further review by the Louisiana Supreme Court.

On or after January 21, 2016, petitioner filed the instant federal application for habeas corpus relief.[19]  The state has filed a response arguing that the application is untimely.[20]  The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[11] State v. Cook, No. 2013 KW 0920 (La. App. 1st Cir. July 29, 2013); State Rec., Vol. 3 of 5.
[12] State v. Cook, No. 2013 KW 1660 (La. App. 1st Cir. Feb. 27, 2014); State Rec., Vol. 3 of 5.
[13] State ex rel. Cook v. State, 159 So.3d 457 (La. 2015); State Rec., Vol. 3 of 5.
[14] State Rec., Vol. 3 of 5.
[15] State Rec., Vol. 3 of 5, Order dated September 9, 2013.
[16] State Rec., Vol. 4 of 5.
[17] State Rec., Vol. 4 of 5, Order dated March 27, 2014.
[18] State v. Cook, No. 2014 KW 0697 (La. App. 1st Cir. July 28, 2014); State Rec. Vol. 4 of 5.
[19] Rec. Doc. 4.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Because petitioner signed his application on January 21, 2016, see Rec. Doc. 4, p. 8, it obviously was given to prison officials for mailing on or after that date.
[20] Rec. Doc. 11.

underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[21] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, the Louisiana Supreme Court denied petitioner's direct-review writ application on January 11, 2013.[22] As a result, his state criminal judgment became final for AEDPA purposes, and his federal limitations period therefore commenced, ninety days later on April 11, 2013. His limitations period then expired one year later, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After twenty (20) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on May 2, 2013.[23] Tolling then continued

---

[21] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.
[22] State v. Cook, 106 So.3d 548 (La. 2013); State Rec., Vol. 2 of 5.
[23] Although petitioner's first federal application was pending during this twenty-day period, that filing is of no moment here. An application for federal habeas corpus review is not an "application for State post-conviction or other collateral review" and therefore does not trigger the tolling provisions § 2244(d)(2). Duncan v. Walker, 533 U.S. 167 (2001); Mathis v. Thaler, 616 F.3d 461, 473 (5th Cir. 2010); In re Wilson, 442 F.3d 872, 876 n.5 (5th Cir. 2006); Mercadel v. Cain, 84 Fed. App'x 456, 457 (5th Cir. 2004).

uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).

With respect to petitioner's related writ applications, the state concedes that petitioner timely sought review by the Louisiana First Circuit Court of Appeal and, therefore, petitioner's federal limitations period remained tolled while those writ applications were pending.[24]  However, the state argues that petitioner's related writ application was not timely filed with the Louisiana Supreme Court, and, as a result, he received no tolling credit for that untimely application.  Again, the state is correct.

It is clear that a state application ceases to be pending when a petitioner's time expires for seeking supervisory review of a denial of relief.  See Grillette, 372 F.3d at 769-71 (5th Cir. 2004).  Here, the Louisiana First Circuit Court of Appeal denied relief on February 27, 2014.[25]  Petitioner then had only thirty days, i.e. until March 31, 2014, to seek review by the Louisiana Supreme Court.[26]  Petitioner failed to meet that deadline.

Although he *subsequently* filed a related writ application with the Louisiana Supreme Court, that application was untimely.  It is true that Louisiana courts have adopted a "mailbox rule" which holds that a document is considered "filed" when it is delivered to prison officials for mailing.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).  Nevertheless, because petitioner did not even sign his Louisiana Supreme Court writ application until April 26, 2014, it obviously

---

[24] Rec. Doc. 11, p. 9.
[25] State v. Cook, No. 2013 KW 1660 (La. App. 1st Cir. Feb. 27, 2014); State Rec., Vol. 3 of 5.
[26] See Louisiana Supreme Court Rule X, § 5(a).  In this case, the thirtieth day of that period fell on a Saturday, and, therefore, petitioner had until Monday, March 31, 2014, to file a Louisiana Supreme Court writ application.  See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

could not have been given to prison authorities for mailing any earlier than that date. Therefore, even under the state's "mailbox rule," the writ application was untimely, and it is clear that a federal habeas petitioner receives *no tolling credit whatsoever* for an untimely Louisiana Supreme Court writ application. Williams v. Cain, 217 F.3d 303 (5th Cir. 2000); see also Batiste v. Rader, Civ. Action No. 11-1025, 2011 WL 8185554, at *2 (E.D. La. Dec. 7, 2011), adopted, 2012 WL 2527063 (E.D. La. June 29, 2012); Marshall v. Warden, Avoyelles Correctional Center, Civ. Action No. 09-7231, 2010 WL 2977375, at *2 (E.D. La. June 11, 2010), adopted, 2010 WL 2978218 (E.D. La. July 20, 2010); Jenkins v. Cooper, Civ. Action No. 07-0216, 2009 WL 1870874, at *5 (E.D. La. June 26, 2009); Orgeron v. Cain, Civ. Action No. 06-1451, 2006 WL 2789087, at *5 (E.D. La. Sept. 8, 2006).

Based on the foregoing, the undersigned finds that all tolling credit based on petitioner's 2013 post-conviction application ceased on March 31, 2014, when petitioner's period expired for filing a timely Louisiana Supreme Court writ application.

That said, petitioner's federal limitations period did not in fact resume running on that date because he was entitled to an overlapping period of tolling based on a separate filing, i.e. the motion to correct illegal sentence he filed with the state district court on March 19, 2014.[27] As previously indicated, that motion was denied on March 27, 2014,[28] and petitioner's related writ application was denied by the Louisiana First Circuit Court of Appeal on July 28, 2014.[29] Therefore, tolling based on that motion terminated no later than August 27, 2014, when his time expired for seeking further review by the Louisiana Supreme Court.

---

[27] State Rec., Vol. 4 of 5.
[28] State Rec., Vol. 4 of 5, Order dated March 27, 2014.
[29] State v. Cook, No. 2014 KW 0697 (La. App. 1st Cir. July 28, 2014); State Rec. Vol. 4 of 5.

When petitioner's federal limitations period finally resumed running at that point, he had three hundred forty-five (345) days remaining. Therefore, he had until August 7, 2015, either to file his federal application or to again toll the limitations period.

Petitioner had no applications pending before the state courts during the remaining days of the limitations period. Therefore, he clearly is not entitled to further *statutory* tolling.

The Court must next consider *equitable* tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court also notes that the United States Supreme Court has held: "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). Here, petitioner does not invoke McQuiggin. However, in the event he does so in any objections to this Report and Recommendation, the

undersigned finds that petitioner has not made the showing required under McQuiggin for the following reasons.

In McQuiggin, the Supreme Court expressly cautioned:  "[T]enable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Further, as the United States Sixth Circuit Court of Appeals has explained:

> To assess that question, a court must survey "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted).  With "all the evidence" thus in mind, the court's final task is "to assess the likely impact of the evidence on reasonable jurors"; it is not to work through an "independent factual determination" to divine "what likely occurred." Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 Fed. App'x 605, 613 (6th Cir. 2013).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence presented at trial and on which petitioner's conviction is based.  That evidence is recounted in the Louisiana First Circuit Court of Appeal's summary of the facts of this case on direct appeal:

> On March 23, 2011, James Planche, Jr., contacted a friend in hopes of purchasing painkillers.  Planche's friend asked him to meet defendant at the Wal-Mart on Gause Boulevard in Slidell, and to buy a box of Sudafed for defendant in exchange for four hydrocodone pills.  Upon his arrival at Wal-Mart, Planche met defendant in the electronics section, and defendant gave him $5.00 in cash, a card used to purchase Sudafed from the pharmacy counter, and an empty cigarette pack containing four hydrocodone pills.
> Brandon Brown, the loss prevention officer for the Slidell Wal-Mart, observed defendant in the electronics section prior to Planche's arrival at the store.  Brown recognized defendant as a person who he had previously seen in the store buying Sudafed and other precursors to the manufacture of methamphetamine.

      Brown observed as defendant spoke to someone on his cell phone, retrieved cash from his wallet, and met with Planche. Defendant and Planche walked together to the pharmacy area, but defendant continued walking, and he exited the store before Planche bought a box of Sudafed. Brown telephoned Officer Bradley Hoopes of the Slidell Police Department to inform him that he suspected Planche's purchase of Sudafed was related to methamphetamine production. Officer Hoopes received Brown's call as he was pulling into the Wal-Mart parking lot to begin his detail assignment at the store.

      After Planche purchased the Sudafed, he exited the store and began looking for defendant. Planche entered his vehicle, started to drive around the parking lot, and called defendant to let him know that he had bought the Sudafed. Planche spotted defendant and pulled into a parking space near the front of the store.

      As defendant approached the driver's side of Planche's vehicle, Officer Hoopes parked his vehicle behind Planche's, and he observed Planche handing defendant a Wal-Mart bag. Upon seeing Officer Hoopes, Planche threw the hydrocodone pills into his back seat. Officer Hoopes exited his vehicle and instructed defendant and Planche to show him their hands. Defendant showed his hands to be empty. Officer Hoopes observed Planche begin to reach behind the front passenger's seat. He asked again to see Planche's hands, and Planche complied, showing Officer Hoopes that they were empty. Officer Hoopes asked the men where the box of Sudafed was located, and while Planche immediately admitted that he had purchased it for and had given it to defendant, defendant immediately denied any knowledge of the Sudafed and allowed Officer Hoopes to pat him down. During defendant's pat down, Planche again reached into his backseat area, and Officer Hoopes again asked to see Planche's hands. Planche opened up his hand to reveal at least three hydrocodone pills. When Officer Hoopes had Planche exit his vehicle, the Wal-Mart bag containing Sudafed fell out onto the ground. Officer Hoopes placed both men under arrest. After defendant was read his Miranda rights, he admitted that he had given Planche cash to purchase Sudafed because he was over his thirty-day personal limit, and he stated that the Sudafed was going to be used to manufacture methamphetamine.[30]

The foregoing "old evidence" evidence was obviously compelling evidence of guilt, and so petitioner would face a daunting burden to present a credible "actual innocence" claim. Specifically, the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence --

---

[30] State v. Cook, No. 2011 KA 2336, 2012 WL 2061518, at *1 (La. App. 1st Cir. June 8, 2012); State Rec., Vol. 1 of 5.

9

Case 2:16-cv-00954-CJB   Document 12   Filed 05/09/16   Page 10 of 11

*whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence* -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995) (emphasis added). Here, petitioner presents no new evidence whatsoever, much less any evidence of the type or caliber referenced in Schlup. Therefore, he has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the *new* evidence, *no* juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329; emphasis added). Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than August 7, 2015, in order to be timely. His application was not filed until on or after January 21, 2016, and, therefore, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by John H. Cook be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[31]

      New Orleans, Louisiana, this ninth day of May, 2016.

      **SALLY SHUSHAN**
      **UNITED STATES MAGISTRATE JUDGE**

---

[31] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.